**Anna Marie HILL, Administratrix of the Estate of Alvin Sons and next friend of Misty Dawn Hill, Plaintiff,**

v.

**FRANKLIN COUNTY, KENTUCKY, Hunter Hay, Individually and in Official Capacity as Jailer, Franklin Co. Jail, Fiscal Court of Franklin County, Robert T. Harrod, Individually and in Official Capacity as Franklin Co. Judge–Executive, et al., Defendants.**

Civ. A. No. 89–103.

United States District Court,
E.D. Kentucky,
at Frankfort.

Jan. 14, 1991.

Joseph Newburg, Frankfort, Ky., for plaintiff.

C. Thomas Hectus, Louisville, Ky., James E. Boyd, Frankfort, Ky., for defendants.

OPINION AND ORDER

BERTELSMAN, District Judge.

On January 4, 1991, this matter came before the court for hearing on defendants' motion to dismiss (MTD), which the court treats as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b). Joseph A. Newberg appeared on behalf of plaintiff. C. Thomas Hectus and James E. Boyd appeared on behalf of defendants.

This is an action for damages under 42 U.S.C. § 1983. Defendants are Franklin County, Kentucky; Franklin County Fiscal Court; the prior and current Judge–Executive of the Fiscal Court; Hunter Hay, jailer of the Franklin County Jail; and "unknown deputies and employees of Frankfort and Franklin County, Kentucky."

By order dated April 5, 1990, this court dismissed plaintiff's claims against defendants in their individual capacities on the ground of qualified immunity, and dismissed plaintiff's pendent state claims without prejudice. The parties were directed to file supplemental memoranda addressing, among other things, the applicability of *Johnson v. Hardin Co., Ky.,* 908 F.2d 1280 (6th Cir.1990), to the remaining claim.

KRS 222.203 requires that persons arrested for intoxication under KRS 222.202 be taken to jail, and also that if such person has not had two prior convictions for intoxication within the previous year then that person be issued a prepayable citation. KRS 222.204 provides:

"Conditions of bail—Liability of jail releasing defendant.

"(1) A person who has been arrested and placed in jail prior to trial for violation of KRS 222.202 and has not had two (2) prior convictions in the previous twelve (12) months for violation of KRS 222.202 shall be released as set forth by the Supreme Court Rule of Criminal Procedure uniform schedule of bail:

"(a) To an adult who is willing to accept responsibility for the defendant through a signature verification on a form determined by the administrative officer of the courts;

"(b) If he pays the requisite amount of bail on a bail schedule issued by the court;

"(c) At such time as he is able to safely care for himself but in no event shall he be detained for more than eight (8) hours following his arrest;

"(d) If he is ordered released by a court of competent jurisdiction; or

"(e) Unless such person's release is precluded by other provisions of law.

"(2) The jail releasing the defendant shall be considered as acting in good faith and shall not be liable for subsequent acts of the defendant upon release."

The Kentucky Supreme Court did not amend the uniform schedule of bail to address intoxication offenses in light of this statute. Approximately one month after the statutes became effective, Franklin County District Court Judge Joyce M. Albro sent a memorandum to all law enforcement officials, including defendant Hay. The memorandum points out the conflict between requiring arrest and requiring that first-time and second-time offenders be issued prepayable citations. It also points out the conflict between releasing such offenders and the failure to amend the uniform schedule of bail in light of the new statute. She concluded that bail was not required for such persons and that such persons be released without bond.

"That leaves us in a situation where I issued a directive to the jailer to release first and second offenders without requiring bond if they have no other charges. I realize that this leaves you with a problem of how to proceed. I am not in a position to advise you on that either. It does seem logical to consider making the arrest, taking the person to jail to determine if they have priors, and if not to issue a payable citation which they have 14 days to pay.

"I see no authority to hold them just because they cannot post bond. I am still researching a justification for incarceration based on dangerousness but I do not know if that will work out."

Defs' MTD, Ex. D.

Plaintiff's decedent was brought to the Franklin County Jail by a Kentucky State Trooper and charged with public intoxication. Decedent had no prior convictions for intoxication for the previous year and, therefore, was issued a prepayable citation and released. Decedent had made telephone calls while at the jail and was permitted to leave the booking area to await his ride. A short time later decedent's ride arrived, at which time it was discovered

that decedent had left. His body was found on a nearby highway, where he had been struck by an automobile.

Plaintiff's decedent argues that the "policy" of defendants was to violate the state statutes above. She maintains that the statutes require arrestees to be held in custody until they are no longer a danger to themselves or until a responsible adult arrives. She argues that this conduct amounts to deliberate indifference to decedent's constitutional rights.

■ The court finds that *Johnson* is dispositive of the remaining claim against defendants in their official capacities. In this case, it is the state General Assembly and the Kentucky Supreme Court that has exercised the final policymaking authority regarding the arrest and release of intoxicated persons. Pursuant to the state policy established in the statutes it is clear that arrestees such as decedent must be issued a prepayable citation. But as illustrated by Judge Albro's memorandum, state law is ambiguous whether arrestees may be detained. The court in *Johnson* stated:

"In *Pembaur v. City of Cincinnati* [475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)] ... a divided Court held that the city was responsible for the policy decision of the County Prosecutor to authorize deputy sheriffs to forcibly enter the plaintiff's clinic to serve capiases on employees believed to be inside where the county had delegated the right to make all decisions to the prosecutor. A majority of the Court noted that

a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood.

".... A plurality of the Court, in an opinion written by Justice Brennan, went on to explain that liability 'attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy **with respect to the subject matter in question.'** ....

Thus, in order for Johnson to prevail under this theory, he must have produced evidence from which a jury could reasonably conclude that Lawson was vested with final authority to set medical treatment policy for the county's prisoners.

"The power of an official to make final decisions regarding questions involving a particular subject matter, in and of itself, is not necessarily enough to establish a local government's liability. In an opinion authored by Justice O'Connor, the plurality of the Court in *City of St. Louis v. Praprotnik* [485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)], ... noted that '[w]hen an official's discretionary decisions are constrained by policy not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality.' ... Justice O'Connor's approach appears particularly reasonable since many, if not most, government officials are vested with the discretion to make some final decisions without the approval of those who set policy on questions involving related subject matter. A contrary result would result in municipal liability for every discretionary decision of every municipal employee, a result rejected by the Court. It may well be that in practice Justice O'Connor's approach is no different from Justice Brennan's. Requiring that an official's decisionmaking authority not be constrained by a superior's policy decisions in one method of assuring that the official in fact has the authority to establish policy over a particular subject matter.

"In any case, Johnson has not established the county's liability under either Justice Brennan's or Justice O'Connor's formulation of the test. *Although it is clear that Lawson applied policy by making decisions regarding Johnson's treatment, Johnson introduced no evidence that indicates Lawson is vested*

*with authority to make all of the county's medical policy decisions."*

908 F.2d at 1286–87 (citations and footnote omitted) (bold in original) (additional emphasis added). For the same reasons, the county cannot be held liable under § 1983 in this case, because it is not responsible for establishing all of the county's policy decisions with respect to the subject of detaining arrestees. Rather, the policy here—ambiguous as it was—was set by the Kentucky General Assembly and the Kentucky Supreme Court.

An essential element of plaintiff's case was that any deprivation of his rights result from an official policy of the *county.* Under *Johnson, supra,* the policy here was that of the Commonwealth. Therefore, an essential element is missing from plaintiff's case and summary judgment is appropriate. *See Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989).

■ Alternatively, plaintiff argues that if permitted to engage in further discovery, she may produce evidence that the custom of the county was to hold arrestees until another person arrived to take responsibility for the arrestee, or until the arrestee was no longer a danger to himself or herself. However, even if plaintiff were able to establish the same as a custom that was deviated from in this instance, at the hearing plaintiff conceded that the correctional officers made the decision to release decedent and permit him to leave the booking area.

A single incident of misconduct by a non-policymaking employee is insufficient to establish a policy that gives rise to municipal liability. Finding a "policy" under these circumstances is the same as holding the municipality liable on the basis of respondeat superior. *See, e.g., Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 2722–23, 105 L.Ed.2d 598 (1989); *Walker v. Norris,* 917 F.2d 1449, 1456 (6th Cir.1990); *Gibson v. City of Chicago,* 910 F.2d 1510, 1522 n. 20 (7th Cir.1990); *Johnson,* 908 F.2d at 1285–86; *Davis v. City of Ellensburg,* 869 F.2d 1230, 1233–34 (9th Cir.1989); *Colburn v. Upper Darby Township,* 838 F.2d 663, 671 (3d Cir.1988).

Accordingly, the court being sufficiently advised,

IT IS ORDERED that defendants' motion for summary judgment be, and it hereby is, granted, and that plaintiff's complaint be dismissed and stricken from the docket. A separate Judgment shall enter concurrently herewith.